FILED

2020 JAN 13 PM 3:32

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Randy Scott,

    Plaintiff,

Case No.

2:20-cv-26-FtM-29NPM

v.

Lehigh Acres Fire Control and Rescue District.,,

    Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. Almost every elected public official in the United States now maintains social media accounts, which are an important source of news and information about the government and important spaces for speech by, to, and about public officials. These digital spaces are the "modern public square." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1732 (2017). As our democracy increasingly moves online, it is crucial that our First Amendment principals are equally applied to digital forums so that the internet does not become a haven for public officials to avoid free speech.

2. This case involves the effort of a State Agency Representative Public Information Officer to suppress dissenting speech on her official social media accounts. In retaliation for Plaintiff's dissenting speech on a coming tax referendum and challenging State

Representative Spencer Roach 5 million-appropriation request for the fire district from the state, Defendant Heck blocked Plaintiff from Defendant's Facebook account.

3. Plaintiff respectfully asks this Court to declare that Defendant's viewpoint-based exclusion of Plaintiff from Defendant's official social medial accounts violates the First Amendment, and order Defendant to restore Plaintiff's access.

### Jurisdiction, Venue, and Parties

4. The Court has jurisdiction, pursuant to 28 U.S.C. §§ 1331, 1367, and 1343, over the claims in this case because they arise under the Constitution and laws of the United States, namely the First and Fourteenth Amendments and 42 U.S.C. § 1983; the state claims are so related to claims in this case that they form part of the same case or controversy; and the claims in this case seek redress for civil rights violations committed under color of state law.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this district and a substantial part of the events giving rise to this claim occurred in this district.

6. Plaintiff Randy Scott resides in Lehigh Acres, Florida, within the bounds of Lehigh Acres Fire District.

7. Defendant Katie Heck. is the public information officer representing Lehigh Acres Fire District. Defendant Heck believes to reside in Lee County and has offices here. Defendant Heck is sued in her official capacity only.

### General Allegations

**A. Background on and Facebook**

8. Facebook is a social media platform that allow users to publish and share

content with each other.

9. On the platform, users can post content. On Facebook users publish "posts." Users have a profile page which contains the user's profile and a timeline in reverse chronology of all of the user's posts.

10. Platforms allow users to subscribe to other users' content. On Facebook, users can "friend" (a verb) individuals or "follow" organizational accounts called "Pages."

11. The platform provide users a personal "feed" which displays the tweets or posts for the accounts they follow.

12. Platforms allow users to interact with other user's content—in fact, this interaction is the defining feature of Facebook. Users can comment on other user's posts, or comment on other comments. These comments appear on users' timelines in conversation chains, such that one user's timeline includes not only their own posts but also the posts and comments of other users. Each users' timeline is thus a digital forum for dialogue, with multiple overlapping conversation threads by and between different users.

13. The platforms allow users to decide whether their content is public or private. Both platforms also allow users to "block" other users.

14. On Facebook, a blocked user cannot comment on, or otherwise interact with the blocking party's timeline or individual posts.

15. On the platform, blocked users are excluded from the blocking party's digital forum in several ways.

16. First, blocked users do not receive real-time notifications of the blocking party's posts. In the context of the rapid interactions that occur on Facebook, the absence of instant notification impedes a user's ability to participate in and shape a conversation.

17. Second, a blocked user cannot publish a comment in the blocking party's timeline—the digital forum. A blocked user is excluded from participating in the public dialogue that occurs in that forum. Conversely, the participants who remain on these public forums are unable to receive the blocked user's viewpoint.

**B. Defendant Heck' Use of Facebook**

18. Defendant Heck maintains a Facebook account, @LehighAcresFD, which she uses in her official capacity as a Public Information Officer to make official statements, share information about legislative activities and other government functions, and to communicate with the public.

19. Facebook allows individuals to create individual accounts, and Facebook allows organizations and public officials to create "Pages." Like personal accounts, the Page of a public official contains profile information and a timeline with posts. Users can interact with a public official's Page just like a personal account timeline, by publishing content, posting replies, "liking" content, or sharing content.

20. Defendant Heck maintains a Facebook Page, @LehighAcresFD which she uses in her official capacity as a Public Information Officer to make official statements, share information about legislative activities and other government functions, and to communicate with the public. Defendant Heck' Facebook Page is titled, "Lehigh Acres Fire Control and Rescue District." Defendant Heck' has posted her official Lehigh Acres Fire Control and Rescue District contact information on her Facebook Page. Defendant Heck has a separate personal Facebook account as an individual Facebook user.

21. Defendant Heck uses the resources of her public office, including staff and

equipment, to manage her official Facebook accounts.

22. Using settings in her Facebook accounts, Defendant Heck intentionally made her official Facebook accounts open to the public for viewing and interaction. Anyone can draft a reply, which will appear on Defendant Heck' official Facebook timeline. Anyone can post or interact with posts on Defendant Hecks' official Facebook Page.

23. Like a continuous virtual town hall event, the interactions on Defendant Heck' official Facebook accounts are multidirectional: individuals contact Defendant Heck; Defendant Heck responds to individuals; and individuals share information and opinions between themselves.

24. As an illustration, on January 4, 2020, at 1:09 pm, Defendant Heck posted an official statement on her Facebook Page regarding an elderly lady patient suffering from appears to have been a form of dementia. After about 48 hours, the post had been shared 10 times, 148 users liked the post (or expressed some sort of emotional response through the "like" button), and 42 users left comments of which 16 were deleted by Katie Heck leaving 26). Some of the comments were responses to other comments sparking sub-conversations. In addition defendant Heck contacted the local news media WINK News to do a puff story for the Fire District using the elderly ladies patient condition and interaction with the district. In fact WINK news even used Katie Heck stock phote of the sheriff and fire truck juxtaposed facing each other.

25. On Facebook, after about 48 hours, the post was liked 4 times and generated 13 comments. Again, some of these comments sparked their own replies and conversation chains.

26. If you were blocked from Defendants Heck' official Facebook and Facebook accounts, you would not have been able to participate in these conversations.

### C. Defendant's Limitation of Plaintiff's Speech

27.     On January 4, 2020 — 2 days after the elderly story first appeared defendant heck blocked and deleted all plaintiffs posts after plantiff responded that the PIO fluff stories violated HIPAA laws regarding patient release of medical condition by health care professionals.

28.     Later that day the defendent HECK had the local news story about the elderly person medical condition linked to her page alerting that the plantiff can not respond in the public forum and was blocked.

29.     Defendant produced a social media document created by the district that directed plaintiff to comply with its content based restrictions or be blocked.

30.     Plaintiff was and continues to be excluded from the dialogue that continues to occur on Defendant Heck' official Facebook pages.

31.     Defendant Heck' viewpoint-based exclusion of Plaintiff from her official Facebook accounts distorts the speech in those forums and causes a chilling effect for others from similarly expressing dissenting viewpoints.

### FIRST CAUSE OF ACTION

**Section 1983: Deprivation of Rights under the First and   Fourteenth Amendments of the United States Constitution (Declaratory and Injunctive Relief)**

32.     By the acts set forth in paragraphs 1 through 31 above, Defendant violated 42 U.S.C. § 1983 by acting under color of state law to deprive Plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution.

33. Defendant Heck' blocking Plaintiff from Defendant's official Facebook accounts violates the First and Fourteenth Amendments because it imposes a viewpoint-based restriction on Plaintiff's participation in public forums.

34. Defendant Heck' blocking Plaintiff from Defendant's official Facebook accounts also violates the First and Fourteenth Amendments because it imposes a viewpoint-based restriction on Plaintiff's access to official statements that Defendant otherwise makes available to the general public.

35. Defendant Heck' blocking Plaintiff from Defendant's official Facebook accounts also violates the First and Fourteenth Amendments because it imposes a viewpoint-based restriction on Plaintiff's ability to petition the government for redress of grievances.

36. Defendant Heck' blocking Plaintiff from Defendant's official Facebook accounts has caused and continues to cause Plaintiff irreparable harm.

37. Defendant Heck requiring plaintiff to comply with a content based social media policy for its employee violates the boundaries placed on government so required in the first amendment of the United States

## SECOND CAUSE OF ACTION

**Violation of Article I, Section 4 of the Florida Constitution (Declaratory and Injunctive Relief)**

38. By the acts set forth in paragraphs 1 through 37 above, Defendant has violated Article I, Section 4 of the Florida Constitution.

39. Defendant Heck' blocking Plaintiff from Defendant's official Facebook

2. Enter an injunction requiring Defendant to unblock Plaintiff from Defendant's official Facebook accounts, and prohibiting Defendant from blocking Plaintiff or others from the accounts on the basis of viewpoint;

1. Award Plaintiff his costs, including reasonable attorneys' fees; and

2. Grant any additional relief as may be just and proper.

Dated: January 14, 2020.    Respectfully submitted,

*Randy Scott* (signature)

Randy Scott
343 Hazelwood Ave S
Lehigh Acres, Fl 33936
2393007007
randy@randyscott.us